# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### NOVEMBER 1998 SESSION

FILED

January 21, 1999

Cecil W. Crowson
Appellate Court Clerk

| STATE OF TENNESSEE, | ) | |
| --- | --- | --- |
| | ) | C.C.A. NO. 01C01-9707-CR-00293 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS H. SHRIVER, |
| ERIK LEE JACKSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Second-Degree Murder) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**RICHARD McGEE**
601 Woodland St.
Nashville, TN 37206

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DARYL J. BRAND**
Asst. Attorney General
John Sevier Bldg.
425 Fifth Ave., North
Nashville, TN  37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**JOHN C. ZIMMERMANN**
       -and-
**HELEN DONNLEY**
Asst. District Attomeys General
Washington Square, Suite. 500
222 Second Ave., North
Nashville, TN 37201-1649


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was charged by indictment with the first-degree premeditated murder of Bryant Perkins.[1]  Following a jury trial and sentencing hearing, he was found guilty of second-degree murder and sentenced as a Range I standard offender to twenty-one years imprisonment.  He now appeals, arguing that the trial court erred in failing to suppress his statement to police and in improperly sentencing him.  Finding no merit to the defendant's arguments, we affirm.

On January 12, 1995, after coming home from school, seventeen-year-old Bryant Perkins and his friend, Robert Wilkerson, were walking down the street in Perkins' neighborhood when a maroon car pulled next to Perkins.  As the driver of the maroon car engaged Perkins in conversation, a light blue car carrying several passengers pulled along side the maroon car, trapping Perkins between the two cars.  Apparently, one of the passengers in the blue car, Marcus Jackson, the defendant's brother, believed that Perkins had stolen his car earlier that day.  Somebody in the back seat of the blue car yelled, "Is that the nigger?"  Perkins put up his hands and said, "Mario, man, you know me," but the driver of the blue car said, "Kill him."  Wilkerson immediately ran, but he heard many gunshots behind him.

Several people witnessed the shooting, including two fourteen-year-olds who were sitting on a house porch nearby, a neighbor who was standing at the corner of his house, and a neighbor who was driving down the street.  Each of these witnesses saw the defendant exit one of the cars and his brother, Marcus, exit the other[2] and shoot

---

[1]The indictment refers to the victim as "Elbert Bryant Perkins."  The transcript, however, refers to the victim as "Bryant Perkins," while the victim's father is referred to as "Elbert Perkins."

[2]Two of the neighbors testified that the defendant was in the maroon car, while one of the other neighbors testified he saw the defendant exit the blue car.

Perkins multiple times. Perkins died shortly thereafter of multiple gunshot wounds.

Twenty-five shell casings from .45 caliber rounds were found in the vicinity of the shooting. Three bullets were removed from Perkins' body. In addition, a house near the scene of the shooting, which was occupied at the time, was hit by at least three bullets, and a Cadillac parked on the street was also struck by several bullets.

After talking with the witnesses at the scene, police officers went to the Jackson brothers' house, believing Marcus Jackson to be a suspect. At the time, the defendant was not home. After talking with detectives, Marcus Jackson confessed and was immediately arrested. The detectives' conversations with Marcus and their investigation of the shooting led them to believe the defendant was involved in the shooting.

On January 14, two days after the shooting, the defendant was stopped on a traffic violation and arrested when weapons were discovered in his vehicle. The defendant was held for questioning by the investigating homicide detectives, and the defendant told them he was involved in the shooting. Specifically, the defendant stated, "Okay. I was there. I shot with the rifle. I only shot one time." The defendant sought to suppress this statement. Following a two-day suppression hearing, the trial court refused to suppress the defendant's statement, finding that the defendant was advised of his rights but never asserted them and that there was nothing intimidating about the detectives' questioning.

The defendant first challenges his conviction, arguing that the trial court should have suppressed his statement. This argument will not afford the defendant relief because the evidence against the defendant was overwhelming. Four individuals who

witnessed the shooting identified the defendant as one of the shooters, which itself is sufficient evidence to sustain the defendant's conviction. Thus, even assuming that the trial court erred in failing to suppress the defendant's statement, the defendant's conviction would not be reversed because any error would not have affected the result of the trial. Tenn. R. Crim. P. 52(a).

The defendant also challenges his sentence. He first argues that the trial court erred in failing to consider his youth as a mitigating factor under T.C.A. § 40-35-113(6)(providing that a sentence may be mitigated on proof that the "defendant, because of youth or old age, lacked substantial judgment in committing the offense"). With regard to this mitigating factor, the trial court stated:

> I don't -- I don't know what considerations went into making this a second degree instead of a first degree unless it -- unless it was that both defendants are, indeed, young. And, to the extent that being young. . . .their -- their young age is a mitigating factor, I make the finding of fact that that is the cause of the second degree murder conviction, and I'm not considering it again as a mitigating factor in the sentencing.

The defendant argues this reasoning was erroneous and that thus, the mitigating factor of youth should be applied to reduce his sentence. Even assuming the trial court's reasoning was erroneous, however, the defendant's argument lacks merit. The defendant was a twenty-year-old adult at the time of the shooting, and there is no evidence in the record that would tend to demonstrate an inability to appreciate the nature of his conduct. State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). Thus, the mitigating factor in § 40-35-113(6) is not warranted in this case.

The defendant also argues that the trial court erroneously considered pending charges against the defendant as a factor to rebut the mitigating factor of T.C.A. § 40-35-113(11), that the crime was committed under "such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." The defendant contends that using pending charges to rebut a mitigating factor has the same

4

effect as considering them as an aggravating factor, and he argues the mere fact that charges are pending, without some evidence that the defendant engaged in criminal conduct, is irrelevant for sentencing purposes.

As a Range I standard offender convicted of second-degree murder, a Class A felony, the defendant faced a possible sentence of fifteen to twenty-five years. After finding that two enhancing factors,[3] which the defendant does not challenge, and no mitigating factors were applicable to this case, the trial court sentenced the defendant to twenty-one years incarceration. Even assuming that the trial court somehow erroneously considered pending charges without evidence of criminal behavior, the defendant would not be entitled to relief on this basis because considering all the circumstances in this case, a sentence of twenty-one years is appropriate.

The trial court's judgment is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
JERRY L. SMITH, Judge

--------

[3]The trial court found that the defendant was a leader in the offense and that he employed a deadly weapon in the commission of the offense. See T.C.A. § 40-35-114(2), (9).